**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NATENAEL DEJENE DINKU,

Petitioner

v. No. 1:26-cv-02924-KG-DLM

LNU, et al.,

Respondents.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Natenael Dejene Dinku's pro se Petition for a Writ of Habeas Corpus ("Petition"), Doc. 1 and the Government's Response, Doc. 7. For the reasons below, the Court grants the Petition.

***I. Background***

The Government does not contest the facts presented in the Petition. *See* Doc. 7 at 1 ("Respondents are not submitting a brief in opposition to the petition or detailing the facts and circumstances of this case"). The Court therefore accepts the facts pled in the Petition as true for purposes of resolving the Petition. *See* Doc. 1.

Petitioner is a native citizen of Ethiopia who entered the United States on November 26, 2024. Doc. 1 at 1, 16. Less than a month later, on December 11, 2024, the Department of Homeland Security ("DHS") found Petitioner had demonstrated a credible fear of persecution or torture and paroled him into the country under 8 U.S.C. § 1182(d)(5)(A).[1] *Id.* at 2, 20; *see also id.* at 29–32 (finding Petitioner's testimony alleging persecution in Ethiopia to be "credible").

[1] Petitioner's Interim Notice Authorizing Parole was issued "in lieu of Form I-94[.]" Doc. 1 at 20.

Petitioner's parole was authorized for one year until December 18, 2026. *Id.* at 20. DHS simultaneously issued Petitioner a Notice to Appear and charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* at 17. As a condition of parole, Petitioner complied with all check-ins and participated in both the Alternative to Detention ("ATD") BI SmartLINK monitoring programs administered by U.S. Immigration and Customs Enforcement ("ICE"). *Id.* at 8–9.

On October 27, 2025, Petitioner received a phone call from ICE instructing him to make a previously unscheduled appearance at an immigration office in Silver Spring, Maryland. *Id.* at 2, 9. The next day, Petitioner was detained by ICE when he arrived at the office for his appointment. *Id.* at 9. Petitioner remains in ICE custody and is currently detained at Cibola County Detention Center in Milan, New Mexico. *Id.* at 1, 11. On December 29, 2025, an immigration judge entered an order of removal. Petitioner's appeal was received by the Board of Immigration Appeals ("BIA") on January 26, 2026. *Id.* at 11, 36. The status of that appeal remains pending. *Id.* Prior to his detention, Petitioner did not receive an email or any other written notice informing him that his parole had been terminated, nor did he receive any explanation why it was terminated. *Id.* at 2, 9–11.

Petitioner challenges his continued detention as unlawful and seeks immediate release on the basis that his parole was not properly terminated prior to his detention. *Id.* at 3. In the alternative, Petitioner asks this Court to find that 8 U.S.C. Section 1226(a) governs his detention and order his immediate release or an individualized bond hearing. *Id.* at 4–6.

## ***II. Legal Standard***

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). Federal courts have

jurisdiction to review habeas petitions filed by noncitizen detainees alleging "custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In habeas corpus proceedings, "a federal court possesses power to grant *any form of relief necessary* to satisfy the requirement of justice." *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (citation modified).

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. *See* 8 U.S.C. §§ 1101-1537. "Noncitizens who arrive at a port of entry without a visa or other entry documents . . . are deemed inadmissible under 8 U.S.C. § 1182(a)(7)." *Mendibaev v. Lyons*, No. 1:25-cv-01308-DHU-GBW, 2026 WL 917457, at *3 (D.N.M. Apr. 4, 2026) (internal quotation marks and citation omitted). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The Government may place the noncitizen into expedited removal proceedings, *see* Section 1225(b)(1), or place the noncitizen into regular removal proceedings under Section 1229(a), *see id.*

Two provisions of the INA govern the detention of noncitizens pending removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). First, Section 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as "[noncitizens] seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Absent exceptions irrelevant here, Section 1225 "mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at *1 (D.N.M. Nov. 14, 2025).

By contrast, Section 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country." *Jennings*, 583 U.S. at 303. Section 1226(a) authorizes the arrest and detention of noncitizens, "on a warrant issued by the Attorney General . . . pending a decision on whether [they are] to be removed." Under federal regulations, a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing at the "outset of detention." *Jennings*, 583 U.S. at 306.

Immigration parole is a narrow exception to the otherwise mandatory detention of noncitizens under Section 1225(b)(1). Under Section 1182(d)(5)(A), a noncitizen applicant for admission who is ordinarily subject to mandatory detention under Section 1225(b)(1) may be paroled into the United States pending the resolution of their immigration proceeding. The discretionary decision to grant parole rests with the Secretary of DHS, who may parole noncitizens to serve "urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). "[W]hen the purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Immigration parole terminates automatically if the parolee departs the United States or the authorized parole period expires. 8 C.F.R. § 212.5(e)(1). If parole is not terminated automatically, then early termination requires "written notice" to the noncitizen. § 212.5(e)(2). Service of a "charging document" to the noncitizen is sufficient notice to terminate parole "unless otherwise specified." *Id.*

## *III. Analysis*

Petitioner seeks immediate release from immigration custody on the basis that his parole was not properly terminated before he was detained. Doc. 1 at 3–4. The Court agrees and concludes that: (1) Petitioner did not receive any notice of the Government's termination of his parole; (2) the Government's failure to provide Petitioner with written notice violated his constitutionally protected liberty interest under the Due Process Clause of the Fifth Amendment; and (3) the appropriate remedy for Petitioner's unlawful detention is immediate release.

A. Petitioner did not receive any notice terminating his parole.

As a preliminary matter, the Court must first determine whether Petitioner received adequate notice regarding the termination of his parole. Here, the uncontested facts show that Petitioner was paroled into the country for one year until December 18, 2025, and that he complied with all of the conditions of his release. *Id.* at 2. The facts also indicate that Petitioner was not provided with any notice—much less the requisite written notice in the form of an individualized charging document—that his parole was revoked prior to his detention by ICE on October 27, 2025. *Id*. The Court therefore finds that Petitioner did not receive any notice—written or otherwise—terminating his parole.

B. The Government's failure to provide any notice violated Petitioner's procedural due process rights.

Next, the Court must determine whether the Government's failure to provide Petitioner with adequate notice before terminating his parole violated Petitioner's due process rights. The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person "of life, liberty, or property without due process of law." U.S. Const. amend. V. In immigration proceedings, noncitizens subject to removal are only entitled to minimal due process protections—namely, "the opportunity to be heard at a meaningful time and in a

meaningful manner." *de la Llana–Castellon v. INS*, 16 F.3d 1093, 1096 (10th Cir. 1994) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)); *but see United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[Noncitizens] receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."). As a result, "any alleged liberty interest [in discretionary immigration relief] must be created by statute or regulation." *Sosa-Valenzuela v. Holder*, 692 F.3d 1103, 1112 (10th Cir. 2012) (citation omitted).

Courts analyze due process claims in two steps. First, they evaluate whether a protected liberty interest exists, and second, they examine whether the procedures used to deprive that interest were constitutionally sufficient. *Ky. Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989). The Court addresses each step in turn.

1. <u>The applicable regulation affords Petitioner a protected liberty interest</u>.

Protected liberty interests "may arise from two sources—the Due Process Clause itself and the laws of the States." *Id.* (citation omitted). Here, the applicable regulation—8 C.F.R. § 212.5(e)(2)(i)—requires the Government to provide a noncitizen with "written notice" in the form of an individualized "charging document" before terminating parole. Because this regulation "substantively limit[s] the exercise of official discretion" by requiring the Government to provide written notice, the Court concludes it affords Petitioner a protected liberty interest. *Sosa-Valenzuela*, 692 F.3d at 1112 (citation omitted); *see also Alcide v. de Anda-Ybarra*, No. 1:26-cv-00249-KWR-GBW, 2026 WL 622663 at *5–6 (D.N.M. Mar. 5, 2026) (finding 8 C.F.R. § 212.5(e)(2)(i) affords paroled noncitizens a protected liberty interest). The Court further concludes that the Government violated Petitioner's protected liberty interest because Petitioner did not receive any notice terminating his parole.

2. Petitioner was not afforded adequate due process.

Because the Court has determined the relevant regulation affords Petitioner a liberty interest, the Court must also determine what amount process is due. *See Thompson,* 490 U.S. at 460. In the immigration context, courts apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See*, *e.g.*, *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990). Under *Mathews*, the Court balances three factors: (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. 424 U.S. at 335.

The Court finds the *Mathews* factor weighs heavily in favor of Petitioner, who has a significant and substantial private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Prior to his detention, Petitioner lived and worked without incident in Silver Spring, Maryland. *See* Doc. 1 at 2, 58–67. The revocation of Petitioner's parole without notice severely undercuts his due process right "to be heard at a meaningful time and in a meaningful manner." *Sosa-Valenzuela*, 692 F.3d at 1112.

The second *Mathews* factor also favors Petitioner. "The value of adhering to [this] regulatory safeguard . . . is very high . . . [b]ecause there are no other formal mechanisms for review or opportunities to be heard[.]" *Alcide*, 2026 WL 622663 at *6. At the same time, the risk of erroneous deprivation, especially in this case—where an asylum officer previously found Petitioner had demonstrated a credible fear of persecution or torture—is equally high because

there is no procedure to challenge the termination of parole once it has been affected. *See* Doc. 1 at 2, 20.

Finally, the third *Mathews* factor favors Petitioner. While the Government has a strong interest in enforcing its immigration laws, its interest in terminating parole and detaining a noncitizen without any written notice or explanation is low. *Id.* The Court acknowledges that providing Petitioner with written notice of termination necessarily entails some degree of "administrative burden[]." *See Mathews*, 424 U.S. at 335. But "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal," *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, No. 1:24-cv-009998-EPG-HC, 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025) (collecting cases), and providing Petitioner with written notice of the termination of his parole is no more burdensome. Additionally, the relevant regulation provides the Government may terminate parole "when in the opinion of [a designated official], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States[.]" 8 C.F.R. § 212.5(e)(2)(i). Therefore, written notice does not interfere with the Government's "sovereign prerogative" to decide which noncitizens to admit. *Landon*, 459 U.S. at 32.

In sum, all three *Mathews* factors weigh in favor of Petitioner. The Court therefore concludes that the Government violated Petitioner's due process rights and, as a result, he is unlawfully detained.

C. Immediate release is the proper remedy.

The Court further concludes that the immediate release of Petitioner is the appropriate remedy. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("The typical remedy for [unlawful executive] detention is, of course, release."); *see also* 28 U.S.C. § 2243 (authorizing district courts to dispose of habeas cases "as law and justice require"). This conclusion is also consistent

with that of other district courts, which have found "the appropriate remedy, if not the only remedy, is immediate release." *Alcide*, 2026 WL 622663, at *6; *see also Rojas-Ospina v. Baltazar*, No. 1:26-cv-02075-NYW, 2026 WL 1601680 at *3 (D.Co. June 4, 2026); *Andreu v. Baltazar*, 831 F. Supp. 3d 1103, 1107 (D.Co. 2026); *Khudaev v. Blanche*, No. 2:25-cv-01291-KWR-JHR, 2026 WL 1602029 at *10 (D.N.M. June 4, 2026).

The Court acknowledges that Petitioner's parole subsequently expired on December 18, 2025. *See* Doc. 1 at 2, 20. But that fact alone cannot cure the Government's failure to provide Petitioner with the written notice terminating parole required by regulation and due process. DHS's regulations are abundantly clear: early termination of a noncitizen's parole under 8 C.F.R. § 212.5(e)(2)(i) requires written notice. It is also equally clear that Petitioner was not provided with any notice. Under the circumstances, any lesser remedy than immediate release would inadequate because DHS's regulations do not provide any procedure to challenge the termination of parole once it has been terminated.

## *IV. Conclusion*

For the reasons above, the Petition for Writ of Habeas Corpus, Doc. 1, is granted. The Court orders:

1. Respondents must immediately release (no later than forty-eight (48) hours from this Order's filing) Petitioner from custody.
2. Upon Petitioner's release, Respondents must return all of his property, including any identification documentation that was in his possession when he was detained.
3. Respondents shall provide a copy of this Order to Petitioner.
4. Respondents must file a status report within five (5) business days of this Order's filing to certify their compliance.

5. If Petitioner is re-detained prior to final order of removal, all applicable regulations and procedures must be followed.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales___________________
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.